ROGERS v. GREAT NORTHERN LIFE INS. CO.

1. INSURANCE—CONSTRUCTION OF POLICY—INTENT.
   Insurance policies are to be construed as a whole and the intent of the parties gathered from the four corners of the instrument.

2. SAME—CONSTRUCTION OF POLICY—FORFEITURES.
   While courts will not write a new contract for the parties, they will construe insurance contracts in a reasonable manner so as to avoid forfeitures arising from failure of the beneficiary to perform an impossible act.

3. SAME—ACCIDENTAL DEATH—DELAYED NOTICE OF LOSS TO INSURER.
Beneficiary, widow of one insured under an accident policy, who gave defendant insurer notice of fact that her husband had been accidentally killed about a year previously within a few days from time she learned through his employer of existence of such a policy *held,* to have complied with requirements of policy as soon as it was reasonably possible for her to do so, under the particular facts of the case, where at time of his death she did not know he was insured, did not know he had a policy with defendant company, found no policy in his papers after diligent search thereof and has never found such policy.

4. SAME—ACCIDENTAL DEATH—FILING PROOFS OF LOSS—WAIVER.
Insurer which failed to furnish forms for filing proof of loss upon receiving notice of death of one insured under accident policy, even though such notice was delayed about a year, *held,* not entitled to avoid liability for failure to comply with policy as to filing proofs of loss where its denial of liability was upon the ground that plaintiff had not complied with terms of the policy in giving insurer notice of insured's death, compliance with provisions as to filing proofs of loss being waived not only by failure to furnish such forms but also by negotiations extending over several months.

Appeal from Kent; Perkins (Willis B.), J. Submitted April 6, 1938. (Docket No. 18, Calendar No. 39,894.) Decided June 6, 1938. Rehearing denied October 3, 1938.

Action by Mary C. Rogers against Great Northern Life Insurance Company for benefits on an accident insurance policy. Directed verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Cornelius Hoffius (Russell Van Kovering,* of counsel), for plaintiff.

*John J. Temple (Harry S. Toy,* of counsel), for defendant.

POTTER, J. Plaintiff sued defendant to recover benefits under an accident insurance policy issued

by defendant covering her husband, Earl T. Rogers. The policy was issued June 10, 1935, and insured Earl T. Rogers against death by accidental means. Deceased was killed in an automobile accident July 18, 1935, while the policy was in full force and effect. The policy provided that in such event defendant would pay the beneficiary named in the policy $1,000. It has not paid it.

Plaintiff had no knowledge of the existence of the policy at the time of her husband's death. After his death, she made a search of his papers but did not locate the policy. She has never found it. Plaintiff learned of the possibility of the existence of the policy in July, 1936, through John Hekman, president of the Hekman Biscuit Company by whom her husband had been employed. The Hekman Biscuit Company furnished its employee, Rogers, membership in the Automobile Club of Michigan. As a member of the club, deceased was issued the insurance policy involved, which is a part of the benefit derived from membership. Mr. Hekman, in conversation with Mr. Grashorn, Grand Rapids manager of the Automobile Club of Michigan, asked whether Rogers was covered by an accident policy. Grashorn agreed to investigate, and July 10, 1936, wrote Hekman that he had written the club's Detroit office and found Rogers was covered under an accident policy at the time of his death, and asked that he be sent a complete account and newspaper clippings concerning the death. Grashorn said accidental death under the terms of the policy must be reported within 20 days, but the Detroit office of the club would do all it could to get the claim accepted. Hekman wrote Grashorn July 14, 1936, inclosing a newspaper account of the circumstances of death and explained that plaintiff knew nothing of the

existence of the policy and did not have it in her possession at any time.   July 22, 1936, the assistant claims manager of the Detroit Automobile Inter-Insurance Exchange, D. N. Tanner, Jr., wrote Mr. C. O. Pauley, secretary of defendant, stating it had received word that Rogers was killed in an automobile accident about a year before, that he had a policy with the defendant, that the beneficiary, Mrs. Rogers, his widow, did not until recently learn there was such a policy issued by defendant, and requested instructions relative to whether it would be satisfactory for it to accept affidavits from the beneficiary, the undertaker, et cetera.   July 23, 1936, Mr. Pauley wrote to Mr. Tanner stating defendant would not want to acknowledge any liability or waive any of the provisions of the policy with regard to notice or proofs of loss unless the circumstances were very unusual or until ''we had an opportunity to investigate the facts.''   He asked that a copy of Hekman's letter and any other correspondence with anyone representing the beneficiary be sent to him and said the case would be looked into and a decision given as promptly as possible.   July 29, 1936, Pauley wrote Tanner acknowledging receipt of his letter of July 25, 1936, in which was inclosed Hekman's letter to the Detroit Automobile Inter-Insurance Exchange, together with newspaper clippings.   He said he intended to spend a day in Detroit during the month of August and they might discuss the matter personally at that time.   He suggested that Tanner write Hekman that defendant, and not the Automobile Club of Michigan, would have to decide the question of liability; also to write him ''that you expect an officer of the Great Northern Life Insurance Company to be in Detroit some time soon, at which time this matter will be discussed and he will

be advised as to the company's attitude." His letter ended with this statement "Since there has already been a delay of a year in notifying us, further delay will not work any hardship to anyone." November 3, 1936, Pauley wrote Hekman that defendant could not recognize any liability under the policy in view of the failure of the beneficiary to comply with the standard provisions Nos. 4, 5, 6 and 7 of the policy. These provisions provided substantially as follows:

"4. Written notice of injury on which claim may be based must be given to the company within 20 days after the date of the accident causing such injury. In event of accidental death immediate notice thereof must be given to the company.

"5. Such notice given by or in behalf of the insured or beneficiary, as the case may be, to the company at Westminster building, Chicago, Illinois, or to any authorized agent of the company, with particulars sufficient to identify the insured, shall be deemed to be notice to the company. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible.

"6. The company, upon receipt of such notice, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not so furnished within 15 days after the receipt of such notice, the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting within the time fixed in the policy for filing proofs of loss, written proof covering the occurrence, character and extent of the loss for which claim is made.

"7. Affirmative proof of loss must be furnished to the company at its said office in case of claim

for loss of time from disability within 90 days after the termination of the period for which the company is liable, and in case of claim for any other loss within 90 days after the date of such loss."

In his letter, Pauley said:

"In view of the large benefits provided in the policy in proportion to the premium paid, the Great Northern Life Insurance Company feels that the policyholder and the beneficiary should be held to strict compliance with the terms of the policy and therefore incorporated in the policy the following: 'Strict compliance on the part of the insured and beneficiary with all of the provisions of this policy is a condition precedent to recovery hereunder, and any failure in this respect will forfeit to the company all rights to any indemnity.' "

November 10, 1936, Hekman wrote Pauley expressing his displeasure concerning defendant's decision, to which Pauley replied on November 16, 1936, with a further explanation of the reasons for the company's decision.

February 5, 1937, suit was instituted by plaintiff. After appearance of defendant, and declaration filed, defendant filed an answer on April 2, 1937, in which affirmative defenses were set up based on the provisions in the policy relative to notice, proof of claims, and strict compliance with the terms of the policy, as mentioned above. Plaintiff replied, setting up her lack of knowledge of the existence of the policy, search of deceased's papers, and the diligence, after she learned her husband had been insured, in giving notice to defendant, and that it was not reasonably possible for her to do so before that time. Plaintiff admitted that proof of loss was not filed within 90 days after the accidental death of Rogers, but stated it was impossible to do so for

the reasons stated above, and, therefore, due to the special circumstances, she was excluded from strict compliance with the terms of the policy. Defendant filed a motion to strike plaintiff's reply from the files. There was a multiplicity of amendments and motions in accordance with the practice but which are unnecessary to a definition of the issues or a determination of the case.

Plaintiff, at the trial, maintained the motions made before two other circuit judges at different times were decided in her favor, while defendant said they were not passed upon. Eventually, the cause came on for trial before the late Willis B. Perkins, circuit judge, and a jury. Whereupon defendant moved to dismiss upon the ground plaintiff had failed to make out a cause of action in her pleadings. The trial court denied the motion, stating the case would be tried on its merits. At the conclusion of plaintiff's case, defendant renewed its motions and again moved to dismiss. Defendant made a motion for directed verdict of no cause of action. The trial court directed a verdict for plaintiff for $1,000, and interest to the date of judgment, amounting to $29.89, on the ground the company, by denying liability after it had carried on this correspondence in an attempt to settle the case, waived the notice and proof of loss regularly provided by the policy. Judgment was entered, and defendant appeals.

Defendant contends plaintiff was barred from recovery by reason of her failure to notify defendant and in failing to file proofs of loss. It relies upon the provisions 4 and 7 above mentioned. Defendant urges the above provisions deal with two distinct propositions, one of which is a written notice of injury on which claim may be based; and the other, affirmative proof of loss. These two require-

ments are distinct in their purpose and must be treated as such. Defendant asks us to read each provision and apply its construction to it.

Insurance policies, like other contracts, are to be construed as a whole. The intent of the parties is to be gathered from the four corners of the instrument. *Girard Fire & Marine Ins. Co.* v. *Scott,* 265 Mich. 293. While courts will not write a new contract for the parties, they will construe insurance contracts in a reasonable manner so as to avoid forfeitures arising from failure of the beneficiary to perform an impossible act. *Lukazewski* v. *Sovereign Camp of the Woodmen of the World,* 270 Mich. 415.

Provision 5, above mentioned, provides in part:

"Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible."

It was not reasonably possible for plaintiff to give, or to have given, notice of her husband's death to the insurer when she did not know he was insured, did not know he had a policy in defendant company, found no policy in his papers after diligent search thereof, and has never found such policy. It was not reasonably possible to give notice of loss to the defendant insurance company in order to fix its liability when plaintiff had no knowledge or information defendant had ever issued an insurance policy covering the life of her husband. The first knowledge plaintiff received of this policy was through the activity of the president of the Hekman Biscuit Company. We think, under the particular facts in this case, the defendant had notice as soon as it was reasonably possible for plaintiff to give it.

Immediately following the provision in the policy above quoted that failure to give notice within the time specified shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible, appears provision 6, above mentioned, providing:

"The company, upon receipt of such notice, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss."

Defendant, in the preparation of this policy evidently had in mind the furnishing of these forms to anyone who gave it notice within 20 days, and to anyone who gave it notice as soon as was reasonably possible under the circumstances. Defendant failed to comply with this provision of the policy and cannot now be heard to urge that its neglect to comply with the terms of the policy prepared by it constitutes a defense to liability under the circumstances in this case.

Defendant did not deny liability by reason of the failure of plaintiff to furnish proofs of loss. It denied liability upon the ground plaintiff did not comply with the terms of the policy in giving it notice of the death of her husband. We think, under the circumstances, plaintiff gave this notice as soon as was possible; that her failure to comply strictly with the terms of the policy in relation to proofs of loss was waived by the defendant, not only by its failure to furnish the necessary forms for proofs of loss in compliance with the terms of the policy, but by its negotiations above mentioned.

Judgment affirmed, with costs to plaintiff.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, CHANDLER, NORTH, and MCALLISTER, JJ., concurred.